UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA              :              **07 CR. 719 (WHP)**

       - v -                                                      :

**KAREEM EDWARDS**                          :

              Defendant.                          :

-------------------------------------------------------X


**DEFENDANT KAREEM EDWARDS' MOTION AND MEMORANDUM IN SUPPORT
THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL STOP, SEARCH
AND SEIZURE**


                                             LEONARD F. JOY, ESQ.
                                             Federal Defenders of New York
                                             Attorney for Defendant
                                              **Kareem Edwards**
                                             52 Duane Street - 10th Floor
                                             New York, New York 10007
                                             Tel.: (212) 417-8762

                                             **DAVID E. PATTON, ESQ.**


TO:    MICHAEL J. GARCIA, ESQ.
         United States Attorney
         Southern District of New York
         One. St. Andrew's Plaza
         New York, New York 10007
         Attn: **BENJAMIN NAFTALIS, ESQ.**
              Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA         :         07 CR. 719 (WHP)

   - v -                                                      :

**KAREEM EDWARDS,**                          :

           Defendant.                     :

------------------------------------------------------X


**DEFENDANT KAREEM EDWARDS' MOTION AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL STOP, SEARCH AND SEIZURE**

     The defendant, Kareem Edwards, is charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1).  Mr. Edwards hereby moves under the Federal Rules of Criminal Procedure 12(b)(3) and 41(f) to suppress evidence obtained as the result of an illegal stop, search and seizure by the New York Police Department on July 6, 2007.  In particular, Mr. Edwards moves to suppress a gun that was found by officers of the New York Police Department pursuant to an illegal stop, search and seizure.

**Factual Background**

     On the afternoon of July 6, 2007, Kareem Edwards was home in his mother's apartment at 1154 E. 229th Street in the Bronx, New York.  (Declaration of Kareem Edwards, attached hereto as Exhibit A).  At some point during the afternoon, Mr. Edwards heard the sound of gunshots fired in his neighborhood.  (Id. at ¶ 2).  He does not know who was shooting or why.  (Id.).  Several hours later -- at least three hours later -- Mr. Edwards left his mother's apartment

and began walking toward a car that he used, an old four-door Toyota Camry, that was owned by his father. (Id. at ¶ 3). Mr. Edwards had permission from his father to use the car. (Id.). The time was approximately 8:30 p.m., and he was not carrying a towel or a gun as claimed in the Complaint. (Id.). After getting into his car, two undercover police officers pulled their unmarked car in front of his so that he could not drive away. (Id. at ¶ 4). At first, Mr. Edwards was not aware that the men were police officers, and he was annoyed that the officers had blocked his way. (Id.). Mr. Edwards got out of his car, stood next to the driver's side door with the door open and asked them in a terse tone, "What's up?" (Id.). They then identified themselves as police officers, and asked Mr. Edwards a series of questions, including questions about the ownership of the car. (Id.). After realizing that the men were police officers, Mr. Edwards was cooperative, and he answered the questions explaining that it was owned by his father and that he had permission to use it. (Id.). He showed the officers the car's valid registration which was in the name of his father, Theodore Edwards, and showed them his driver's permit. (Id.). Mr. Edwards was not acting nervous, and he was not repeatedly placing his hands in and out of his pockets as claimed in the Complaint. (Id.).

Following the officers' questioning of Mr. Edwards, a third officer arrived and began searching the car through the passenger-side rear door. (Id. at ¶ 5). After searching underneath the driver's side front seat, he discovered a black handgun and a frayed, small hand-towel. (Id. at ¶ 5). The gun is approximately 8 inches in length and five inches in height and weighs less than three pounds. (See Firearms Examination Report and Handgun Model Details attached hereto as Exhibit B).

Mr. Edwards did not carry the gun or the towel to the car that day. In fact, the towel was

always kept in the car as a rag for cleaning and maintenance.  (Ex. A at ¶ 6).

## The Complaint

The Complaint in this case was sworn out by Detective Joseph Fitzgerald and was based on statements made to him by one of the officers involved in the stop and search (referred to in the Complaint as "Officer-1").  (See Complaint at ¶ 2, attached hereto as Exhibit C).  According to Officer-1, he and his partner, ("Officer-2"), were in the vicinity of 1160 E. 229th St. in the Bronx, New York on July 6, 2007 at around 8:15 p.m. "after receiving a report of shots fired" in that same area.  (Id. at ¶ 2(a)).

While there, Officer-1 claims to have seen Mr. Edwards walking quickly to his car while "clutching, close to his body, a small, dark-colored towel wrapped around what appeared to be a heavy object."  (Id. at ¶ 2(b)).  Officer-1 further stated that he saw Mr. Edwards open the door to his car, "place the dark-colored towel which appeared to be covering a heavy object underneath the driver's seat," and then get into the car's driver's seat.  (Id. at ¶ 2(c)).

According to the Complaint, the officers then approached the car whereupon Mr. Edwards refused to roll down his window.  (Id. at ¶ 2(d)).  Officer-2 then opened Mr. Edwards driver's side door and asked him a series of questions about the ownership of the car and asked for his driver's license and registration.  (Id. at ¶ 2(e)).  According to Officer-1, Mr. Edwards refused to produce either item at which time Officer-2 ordered Mr. Edwards out of the car.  (Id. at ¶ 2(f)).  Officer-1 further claims that when out of the car, Mr. Edwards was "acting nervous and stuttering, repeatedly mov[ing] his hands between the insides of in [sic] his front and back pockets."  (Id.).  Officer-2 then frisked Mr. Edwards and found nothing of note.  (Id. at ¶ 2(g)).  After Mr. Edwards was frisked, Officer-1 "observed the dark-colored towel protruding out of the

back part of the driver's seat," and proceeded to search under the towel beneath the driver's seat of the car whereupon he found the gun at issue in this case. (Id. at ¶ 2(h)).

A New York Police Department Sprint print-out from July 6, 2007, reveals that the report of shots fired referred to in the Complaint occurred at approximately 5:00 p.m., over three hours before the police stopped Mr. Edwards. (See NYPD Sprint Print-Out, attached hereto as Exhibit D).

## ARGUMENT

The police did not have a lawful basis to stop or frisk Mr. Edwards, nor did they have probable cause to search the car. Each is a violation of the Fourth Amendment requiring suppression of the gun.

### I. The Stop

A police officer may briefly detain and question an individual without a warrant only where the officer has a reasonable suspicion "that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). In evaluating whether an officer's reasons for a stop are legally sufficient, a court must determine if the officer had a "reasonable suspicion, based on specific and articulable facts, of unlawful conduct." United States v. Bayless, 201 F.3d 116, 132 (2d Cir.2000); see also, United States v. Scopo, 19 F.3d 777, 781 (2d Cir.1994).

Here, the officers did not have a reasonable and specific basis for suspecting that Mr. Edwards was engaging in criminal activity. First, under the facts as Mr. Edwards stated them, there is nothing about his conduct suggesting illegal activity. He was stopped, questioned and searched after having walked from his apartment building to his car several hours after a gunshot was heard in the neighborhood.

In addition, even under the officer's version of events, the stop of Mr. Edwards was not lawful. They saw Mr. Edwards walking to a car carrying a towel covering a "heavy object" (an object which we now know weighs less than three pounds). The report of shots fired from earlier in the day was not remotely close in time to Mr. Edwards' stop, did not describe Mr. Edwards with any particularity, did not describe any activity of his and did not describe any item that he was carrying.

Indeed, even if the police had received a precise description of Mr. Edwards as someone who possessed a gun, these circumstances would likely not suffice for a Terry stop. In Florida v. J.L., 529 U.S. 266 (2000), the police received an anonymous call stating that a young, black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. Id. at 268. The police immediately responded to the call and six minutes later found a man meeting that exact description at the particular bus stop reported. Id. The police then frisked the man and found a gun. Id. After the Florida Supreme Court held the search invalid, and certiorari was granted, the United States submitted an amicus brief in support of the State of Florida. Id. at 269.

The United States argued that warrantless stops and frisks should be allowed where: "(1) an anonymous tip provides a description of a particular person at a particular location illegally carrying a concealed firearm, (2) police promptly verify the pertinent details of the tip except the existence of the firearm, and (3) there are no factors that cast doubt on the reliability of the tip." Id. at 271. The Supreme Court rejected that test as "misapprend[ing] the reliability needed for a tip to justify a Terry stop," noting that such a test would "enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun." Id. at 272.

5

In contrast to the circumstances of J.L., where the response was immediate (six minutes) and the description detailed, the police here had no description other than a "black male," and they happened upon Mr. Edwards at least three hours after the reported shots at a generalized location. This, in a densely populated housing development that is heavily African-American. Thus, the fact that the police had received a report of shots fired in Mr. Edwards' neighborhood hours earlier adds virtually nothing to the evaluation of whether the police had reasonable suspicion to detain him. Nor does the sight of him walking to his car allegedly carrying a towel that seemed to be covering a "heavy object." There is simply nothing about walking to a car with a towel covering "a heavy object" that reasonably suggests criminal activity.

## II. The Frisk and Search

Even if Mr. Edwards' initial stop was somehow lawful, his subsequent frisk was not. In order to conduct a lawful frisk of Mr. Edwards without a warrant and without probable cause to arrest him, the police needed to have an objectively reasonable belief that he was armed and presently dangerous. See, e.g., Ybara v. Illinois, 444 U.S. 85, 93 (1979)("Nothing in Terry can be understood to allow a generalized 'cursory search for weapons'..."); United States v. Jaramillo, 25 F.3d 1146, 1151 (2d Cir.1994) (in order to frisk for weapons, the police must have a reasonable belief that the individual is "armed and presently dangerous to the officer or others.").

Even accepting the officers' account of their interaction with Mr. Edwards, there is nothing about his behavior that objectively and reasonably suggested he was armed and presently dangerous. The only additional conduct alleged by the police that Mr. Edwards engaged in after his stop was his failure to produce his license or the car's registration and his nervous appearance

6

in his answers about the ownership of the car.  Courts within the Second Circuit have found reasonable suspicion lacking for a Terry stop or frisk under far more suspicious circumstances than those present here.  See, e.g., United States v. Antuna, 186 F.Supp.2d 138, 145 (D.Conn. 2002) (no reasonable suspicion for stop where officer spotted someone he thought was wanted, who quickly looked away upon seeing the police and then intently watched the police after they drove away); United States v. Crump, 62 F.Supp.2d 560, 564 (D.Conn. 1999) (no reasonable suspicion for stop or frisk where officer believed defendant was deliberately trying to avoid a vehicle checkpoint in a high crime neighborhood by turning his car around and then after being stopped began to walk away from officer, acted a little nervous, and placed his hands in his pocket); United States v. Arenas, 37 F.Supp.2d 322, 327 (SDNY 1999) (no reasonable suspicion for stop or frisk where officers spotted a group of three men that appeared to be falsely posing as tourists and walking in an unusual formation, entered a store with one man appearing to act as a lookout and upon making eye contact with the police left the store, walked quickly away and placed a dark object in his jacket pocket.).

     The police did not have an objectively specific and articulable basis for believing Mr. Edwards was armed and dangerous, and his frisk was unlawful.

## III.  The Search of the Car

     Lastly, the search of Mr. Edwards' car was not lawful.  Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357 (1967).  One exception is the so-called "automobile exception" which allows police to search a car without a warrant if they have probable cause to believe it contains contraband.  See United States v. Ross, 456 U.S.

798, 804 (1982). Here, for all the reasons the police did not have objective and specific reasonable suspicion of criminal activity, or to suspect that Mr. Edwards was armed and dangerous, there was no probable cause to search the car.

Nor, for those same reasons, can the government rely on <u>Michigan v. Long</u>, to contend that the search of the car was warranted based on an objective, specific suspicion that Mr. Edwards was armed and dangerous and that his car contained a weapon. 463 U.S. 1032 (1983) (allowing a limited protective search of the area in a car surrounding a defendant where the <u>Terry</u> standard for a frisk is met). In <u>Long</u>, the police were permitted to conduct a protective search during a roadside stop late at night upon observing a "large hunting knife" in plain view on the floorboard of the driver's side seat. <u>Id.</u> at 1036. The car had been approached by the police after they observed it driving erratically and swerving off the road into a ditch. <u>Id.</u> The police noticed the knife after questioning the driver who appeared intoxicated. <u>Id.</u>

None of the circumstances surrounding Mr. Edwards stop and search remotely approximates the facts of <u>Long</u>. Mr. Edwards was not stopped based on dangerous and erratic driving (he was not driving at all); he was not searched late at night in an isolated area (it was still light out in a densely populated housing development); he did not appear intoxicated; and the police did not observed a dangerous weapon in plain view (instead, they claim to have seen "a heavy object" under a towel). The only other conduct upon which the police relied was Mr. Edwards' (contested) nervousness in responding to their questions about the ownership of the car, which does not give rise to even the slightest inference that he was armed and dangerous.

## Conclusion

The evidence recovered from the car in this case should be suppressed. The police did

not have a warrant, did not have probable cause to arrest Mr. Edwards or to search his car and did not have an objectively reasonable and specific basis to believe that he was armed and dangerous.

**Wherefore**, it is respectfully requested that this Court enter an order suppressing the physical evidence obtained by the New York Police Department in violation of the Fourth Amendment to the United States Constitution.

Dated: New York, New York
       August 22, 2007

                                      LEONARD F. JOY, ESQ.
                                      Federal Defenders of New York
                                      Attorney for Defendant
                                       **Kareem Edwards**
                                      52 Duane Street - 10th Floor
                                      New York, New York  10007
                                      Tel.:  (212) 417-8762

                                      _____
                                      **DAVID E. PATTON**

TO:    MICHAEL J. GARCIA, ESQ.
         United States Attorney
         Southern District of New York
         One St. Andrew's Plaza
         New York, New York  10007
         Attn.:   **BENJAMIN NAFTALIS, ESQ**.
                 Assistant United States Attorney