USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-1-07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                    :

UNITED STATES OF AMERICA

                    :        07 CR 719 (WHP)

        -against-

                    :        ORDER

KAREEM EDWARDS,

                    :

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

           Defendant Kareem Edwards ("Edwards") moves to suppress physical evidence seized incident to his arrest. Edwards contends that his arrest was an unlawful seizure under the Fourth Amendment, requiring all evidence be suppressed as in violation of his constitutional rights.

           This Court conducted a two-day evidentiary hearing and received post hearing submissions from the parties. For the reasons set forth below, Edwards's motion is denied.

## BACKGROUND

           This Court makes the following findings of fact and conclusions of law. On July 6, 2007 sometime after 5:00 p.m., Detective Joseph Scialabba ("Scialabba") received information from a registered confidential informant that a "black male with braids" was involved in a shooting at 1160 East 229th Drive South, in the Bronx ("1160") and that the suspect was still inside the premises. (Transcript of September 4 and September 10, 2007 Hearing ("Tr.") at 6). Based on that information, Detectives Scialabba and Dennis Estwick ("Estwick") traveled to the location and canvassed the building. They spoke with other NYPD officers at the scene who had responded to a "Sprint Report" of shots fired at the same address. (Tr. at 10).

After canvassing the building, Detective Scialabba searched a computer database for suspects in the area that fit the description provided by the confidential informant.  He also informed other members of his tactical team that "a black male with braids" was the shooter. (Tr. at 11-12).  Thereafter, Detectives Scialabba, Estwick and Nuruddin Abdurrahim ("Abdurrahim") (collectively the "Detectives") returned to 1160 at dusk to canvass the area. (Tr. at 13-14).  They rode together in an SUV along the horseshoe shaped road adjacent to 1160. An NYPD evidence collection team was leaving the scene as they approached in their SUV. After a short wait, the Detectives began to drive slowly around the road looking for individuals who fit the description of the suspect. (Tr. at 15).

Just after the evidence team left, the Detectives observed Edwards walking on a pedestrian path beside 1160 approximately 125 feet away.  The Detectives moved toward Edwards in their SUV until Detective Scialabba noticed that Edwards was clutching what appeared to him to be an object wrapped in a cloth under his arm.  (Tr. at 16, 20-21).  Edwards walked quickly with his head down and proceeded to a parked car parked.  As Edwards entered the vehicle, he motioned as if placing an item on the floor.  The Detectives blocked Edwards with their SUV.  (Tr. at 18, 82).

Edwards was questioned and asked to produce identification.  After producing identification, the Detectives asked Edwards to exit his car and a protective pat-down search was conducted.  During this interaction, Edwards was evasive, moving his arms around and continually looking over his shoulder.  Detective Scialabba entered the passenger side of the car and placed his hand under the driver's seat, feeling the cloth he saw Edwards carrying.  (Tr. at 19).  Detective Scialabba felt the outline of a pistol and signaled its presence to the other detectives.  After a brief struggle, the Defendant was placed under arrest.

2

<u>DISCUSSION</u>

I. <u>Legal Standard</u>

In <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968), the Supreme Court "held that a police officer can stop and briefly detain a person if the officer has a reasonable suspicion 'that criminal activity may be afoot.'" Reasonable suspicion is not a high threshold, and the requisite level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. <u>See</u> <u>United States v. Santana</u>, 485 F.2d 365, 368 (2d Cir. 1973); <u>United States v. Arvizu</u>, 534 U.S. 266, 274-75 (2002).

The test to determine reasonable suspicion is an objective one and the court must review the circumstances as a whole and not a discrete separate set of facts. In determining whether the arresting officers' suspicion was objectively reasonable, a court must consider the "totality of the circumstances." <u>See</u> <u>United States v. Cortez</u>, 449 U.S. 411, 417 (1981). The reasonable suspicion analysis "does not deal with hard certainties, but with probabilities," taking into account that law enforcement officers draw from their training and past experiences to assess what they witness in a manner beyond the capacity of the lay person. <u>See</u> <u>Cortez</u> at 418. Reasonable suspicion may be based on a number of factors that include nervous and evasive behavior, flight without cause and presence in a high crime area. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000). If police have reason to believe that the individual is armed and dangerous, they are permitted to conduct a protective search for weapons. The officer is not required to be certain that the suspect is armed but rather may conduct a protective search if there is a reasonable belief that his safety or the safety of others is in danger. <u>Terry</u>, 392 U.S. 1, 27 (1968).

3

II. Legality of the Search

The Defendant contends that the Government's witnesses, and in particular Detective Scialabba, were not credible. Defendant further argues that even assuming the facts as offered by the Government, the stop and search was unlawful.

Detective Scialabba provided the crucial testimony. He received the suspect's description from a confidential informant and was the only officer who testified seeing the Defendant walking quickly from 1160 carrying a cloth-covered object under his arm. Defendant contends that there are significant contradictions between Detective Scialabba's testimony and that of his fellow officers. Defendant also argues that based on the distances, obstacles and lighting conditions at the time of the incident, it is not credible that Detective Scialabba had a reasonable basis to stop and search him. Finally, Edwards argues that even accepting testimony by the Government's witnesses as true, the information the Detectives relied upon amounted to "nothing more than a hunch" and as a matter of law does not objectively suggest criminal conduct. Edwards contends that his conduct, whether viewed individually or collectively, constituted innocent behavior and did not suggest that he was armed or presently dangerous.

This Court disagrees. Crediting the Government witnesses' testimony and looking at all the factors present at the time of the Defendant's initial stop and subsequent limited search, the arresting officers had a duty to investigate further. The officers were canvassing the scene of an alleged shooting with information from a reliable confidential witness who provided a limited description of the suspect. Detective Scialabba had worked with the confidential informant in the past and deemed him reliable. Although the description alone does not provide a basis to search the Defendant, it must be viewed in conjunction with all the other factors. The information was corroborated by a police dispatch description of the suspect as a "black male"

4

and further confirms the location of the shooting. Detective Scialabba testified that he shared his information that the suspect was a "black male with braids" with the other officers involved in Defendant's arrest.

When the Detectives returned to 1160 later that evening, it was still daylight and visibility was good. Detective Scialabba saw Edwards, who generally fit the suspect's description, walking quickly from the vicinity of 1160, the very building where the shooter was reportedly hiding. Most importantly, the Defendant was clutching an object wrapped in a cloth towel under his arm consistent with an attempt to conceal it. While Detective Scialabba was the only officer to testify to this fact, the lack of corroboration is not inherently suspicious. This Court observed each of the three Detectives who testified. In particular, this Court finds that Detective Scialabba testified credibly about what he saw and did. Significantly, Detective Scialabba testified that he witnessed Edwards gesture in a manner consistent with someone placing an item on the ground or under the seat in the car. Both Scialabba and Abdurrahim testified that when Edwards was stopped, he became nervous and evasive.

Based on the totality of the circumstances, assessing the witnesses' credibility, this Court concludes that the Detectives had reasonable suspicion that Edwards was involved in recent criminal activity and may have been armed and dangerous at the time of the initial stop. The Detectives had credible information and witnessed the Defendant act in a manner consistent with a potential suspect. The nature of the alleged shooting and the actions of Edwards afforded the officers a reasonable basis to justify the stop and limited protective sweep of the Defendant.

This Court also finds that the Detectives had reasonable suspicion to justify a security sweep of the Defendant's car. An investigating police officer may make a limited search for weapons if he has a reasonable belief that the suspect poses a danger and may have a

5

weapon within his reach.  See McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997).  A suspect's

presence in a car does not impair an officer's ability to conduct a protective sweep to ensure his

safety.  Considering the report of shots fired at 1160, the confidential informant's tip that the

shooter was in the building, the departure of the evidence team from the scene and the

appearance of Edwards acting suspiciously, a protective sweep was an appropriate exercise of

caution by the Detectives.  Because the search of the vehicle was limited to the area where the

Defendant appeared to have concealed a weapon, it did not expand beyond the limited valid

purpose of ensuring the Detectives safety. [1]  Minn. v. Dickerson, 508 U.S. 366, 374 (1993).

       Accordingly, Defendant's motion to suppress is denied in its entirety.

       The parties are directed to appear for a status conference on November 13, 2007

at 2:30 P.M.

Dated:      November 1, 2007
            New York, New York

                         SO ORDERED:

                         WILLIAM H. PAULEY III
                           U.S.D.J.

---

[1] This Court reviewed the February 2005 Civilian Complaint Review Board finding with respect
to Detective Scialabba and finds it of limited probative value.  This Court paid close attention to
Scialabba's testimony and found him to be forthright and credible at the suppression hearing.

6

Benjamin Naftalis, Esq.
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2456
Fax: (212) 637-2927

David Patton, Esq.
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007
(212) 417-8767
Fax: (212) 571-0392