

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

November 29, 2007

**BY HAND AND ECF FILING**

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

        Re:  **United States v. Kareem Edwards**
              07 Cr. 719 (WHP)

Dear Judge Pauley:

      The Government respectfully submits this letter-memorandum seeking an *in limine* ruling permitting it to introduce at trial: [1] recordings of the 911 call and NYPD Radio Dispatch, for the truth of the matters asserted therein (or, in the alternative, as background evidence); [2] the defendant's statements to the NYPD; and [3] evidence of the earlier shooting, the existence of the confidential informant, and the description of the shooter provided by the confidential informant, all as background evidence that provides needed context for an understanding of the NYPD officers' actions.

### The 911 Call and Radio Dispatch Should Be Admitted

    **A.**    **Factual Background**

      During the evening of July 6, 2007, a 911 call was placed.  (A transcript of that call is appended hereto as Exhibit A.)  In substance, the 911 caller stated that six shots had been fired near 1160 East 229th Drive South ("1160 East 229").  He also stated that there were children in and around the area of the shooting.  The caller gave no description of the shooter.

      After receiving the 911 call, an NYPD radio dispatch

The Honorable William H. Pauley III
November 29, 2007
Page 2

("Radio Dispatch") was sent to NYPD officers in the area alerting them to the shooting.[1] (A transcript of the dispatch is attached hereto as Exhibit B.) The Radio Dispatch includes a colloquy between a New York City Housing Police Officer (the "Housing Officer") and the NYPD dispatcher, in which the Housing Officer reports that shots had been fired by a black male in a black shirt with a black hand gun. The Housing Officer also states that the shooter had run into 1160 East 229. The Housing Officer's descriptions are then relayed over the police radio system.

Approximately three hours after the 911 call and the Radio Dispatch, the defendant was arrested wearing a black shirt and with a black gun.

**B. Discussion**

Both the 911 call and Radio Dispatch are direct evidence of the essential factual question in this case: whether the defendant possessed the firearm charged in the Indictment. The 911 caller's and Housing Officer's information are remarkably consistent with what the arresting detectives observed. Moreover, the 911 call and Radio Dispatch provide important corroboration of and context to likely police testimony. They also help explain why the detectives focused so quickly on the defendant at 1160 East 229, and why the detectives were there.

The defendant will, presumably, argue that this highly probative evidence should be excluded from the jury's consideration on the grounds (1) that its admission would violate the Confrontation Clause, and (2) that it constitutes inadmissible hearsay. These arguments are unavailing.

The Supreme Court has held that the admission of 911 calls of this type does not run afoul of the Confrontation Clause. Additionally, the call and Radio Dispatch are admissible under the longstanding hearsay exceptions for excited utterances and present sense impressions, and several courts have so held in similar circumstances.

---

[1] This Radio Dispatch was separate and apart from the information transmitted to certain NYPD officers by the confidential informant.

The Honorable William H. Pauley III
November 29, 2007
Page 3

### 1. The 911 Call and Radio Dispatch Are Nontestimonial And Do Not Implicate The Confrontation Clause

The aforementioned 911 call and concomitant Radio Dispatch are plainly "nontestimonial" under the Supreme Court's recent decision in <u>Davis</u> v. <u>Washington</u>, 126 S. Ct. 2266 (2006), and their admission thus would not violate the defendant's rights under the Confrontation Clause of the Sixth Amendment. In <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." <u>Id.</u> at 53-54. The Court was careful, however, to limit its holding to "testimonial" statements. <u>See</u> <u>Davis</u> v. <u>Washington</u>, 126 S. Ct. at 2273

In <u>Davis</u> v. <u>Washington</u>, 126 S. Ct. at 2270-73, the Supreme Court clarified the definition of "testimonial." In a pair of cases decided jointly, the Court considered two kinds of statements: a 911 call and a police interview conducted at the scene of a domestic disturbance. Focusing on the particular statements at issue, the Court framed its holding as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

<u>Id.</u> at 2273-74.

Applying these standards, the <u>Davis</u> Court unanimously concluded that the 911 call, although the product of police interrogation, was <u>not</u> testimonial. Whereas the interrogation at issue in <u>Crawford</u> was "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," a 911 call, the Court reasoned, "is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact." <u>Id.</u> at 2276. Moreover, the <u>Davis</u> Court reasoned, the circumstances of the call "objectively indicate its primary purpose was to enable police assistance to meet an

The Honorable William H. Pauley III
November 29, 2007
Page 4

ongoing emergency. [The declarant] was not acting as a *witness*; she was not testifying." Id. at 2277 (emphasis in original) (internal quotation marks omitted).

In the present case, the Government seeks to introduce both a 911 call and a Radio Dispatch, both of which are similar to the 911 call addressed by the Supreme Court in Davis. The dispatcher on both the 911 call and the Radio Dispatch asked questions. But the primary purpose of asking those questions, as in Davis, was to enable police to address an ongoing emergency, in this case an individual who had fired and who was carrying a gun.

There is no issue from the 911 Operator's questions -- both to the 911 Call and the Housing Officer -- that the Operator treated both the Caller's and Housing Officer's reports of an armed shooter as a present and ongoing emergency, and that the Operator's goal in questioning both the Caller and the Housing Officer was to address that emergency and not to elicit testimony regarding some past crime. For example, the Operator asked the Caller how many shots were fired and whether anyone was injured. Moreover, the Operator asked the Housing Officer where the shots were fired, what the shooter looked like, and where the shooter had fled. The circumstances thus "objectively indicate" that there was an ongoing emergency, and that the "primary purpose of the interrogation" was not "to establish or prove past events potentially relevant to later criminal prosecution." Davis, 126 S. Ct. at 2273-74. The Caller's and Housing Officer's statements are thus nontestimonial and their admission would accordingly not implicate the Confrontation Clause.

    **2.    The 911 Call and Radio Dispatch Are Admissible Under The Longstanding Hearsay Exception For Excited Utterances**

Under Rule 803(2) of the Federal Rules of Evidence, the normal bar on hearsay testimony does not apply to "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Excited utterances are admissible because such statements are made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and . . . therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and . . . cross-examination would be superfluous."

The Honorable William H. Pauley III
November 29, 2007
Page 5

Idaho v. Wright, 497 U.S. 805, 820 (1990). In other words, "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998). Moreover, the declarant's availability is immaterial to whether the exception applies. Fed. R. Evid. 803.

When a statement is offered as an excited utterance under Rule 803(2), its proponent must demonstrate three things. First, the proponent must establish that a startling event occurred. Second, the proponent must establish that the statement was made while the declarant was under the stress of excitement caused by the startling event. Third, the proponent must establish that the declarant's statement relates to the startling event. United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001). Those requirements are met here.

First, in this case, it is clear that the startling event occurred. The 911 Caller stated that six shots had been fired near 1160 East 229 and that children were nearby. The Housing Officer also reported shots fired at 1160 East 229. The facts were later corroborated by the NYPD's recovery of spent shells in front of 1160 East 229.

Second, it is clear that both the 911 Caller and the Housing Officer were under stress when they made their respective calls. The stress is apparent from their voices in both recordings, from the words used, and where they were made. For example, the 911 Caller speaks quickly and precisely. He states the problem ("shots fired") and the location, first in general ("by the, by 112th school, by the pool. I'm not sure") and then, when pressed by the Operator, more precisely ("by 1160 or 1154 East 229"). And the immediacy and urgency of his concern is apparent ("There's kids all around.").

Likewise, the Radio Dispatch coveys an immediate and proximate connection between the startling event and the observers. For example, the Housing Officer (on a foot post in the area) seems to describe the shooting as it is happening:

Central:  [U/I] pick up on shots fired 1160 East 229.

Officer:  [U/I] Black male about 5'10'' with a black shirt.

Central:  You said a male black, black shirt. What's the height, [U/I]?

The Honorable William H. Pauley III
November 29, 2007
Page 6

>Officer: 5'10'' with a black shirt. 1160 East 229.

As the investigation progresses, other details are transmitted, such the recovery of shell casings ("I just found some spent shells in front of the building a male ran into the building, some witnesses said"), and the location of the shooter ("Got a male ran into the building, is that the male black, with the black shirt, guy?"). Further, once the location of the shooter is identified, the condition of the police is determined ("Anybody hit? Nobody hit. No injuries at this time.")

It is well-established that seeing a man with a firearm is a startling event. See United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2002) (holding that declarant's statement that he saw a man with a gun constituted a Rule 803(2) "startling event"); Cole v. Tansy, 926 F.2d 955, 958 (10th Cir. 1991) (same); cf. United States v. Mejia-Velez, 855 F.Supp. 607, 614 (E.D.N.Y., 1994) ("A shooting, even in this day and age, is a startling event."). Moreover, it is clear from listening to the recording that the Caller was agitated. See United States v. Phelps, 168 F.3d 1048, 1054-55 (8th Cir. 1999) (affirming admission of declarant's statement to 911 call operator when operator testified that the declarant "sounded upset"); Mejia-Velez, 855 F.Supp. at 614 ("[T]he sheer panic in the voices of [the declarants] . . . is proof that the calls were made while the declarants remained under the excitement of the situation."). If seeing a man with a firearm is a startling event, so too must be hearing gunshots. The statements plainly were made while both the Caller and the Housing Officer were scared and excited.

Third, in a similar vein, there can be no substantial doubt that the declarants' out-of-court statements (i.e., both that Caller's and the Housing Officer's reports of shots fired) related to the startling event (the shooting).

Accordingly, both the 911 Caller's and the Housing Officer's statements are admissible as excited utterances under Rule 803(2) of the Federal Rules of Evidence.

The Honorable William H. Pauley III
November 29, 2007
Page 7

### 3. The 911 Call and the Radio Dispatch Are Also Admissible Under The Longstanding Hearsay Exception For Present Sense Impressions

The Federal Rules of Evidence specifically make admissible, and exclude from the hearsay rule, present sense impressions -- i.e., statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Such statements "are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002). By the plain terms of the Rule, a statement may qualify as a present sense impression even if the declarant is not describing an event as it unfolds. In fact, the Advisory Committee Note to Rule 803(1) specifically states that "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." See, e.g., Jones, 299 F.3d at 113 (affirming admission of statements to an off-duty police officer that were "nearly contemporaneous with the event described"). Moreover, the declarant's availability is immaterial to whether the exception applies. Fed. R. Evid. 803.

Courts have admitted as present sense impressions recordings of 911 callers reporting during or shortly after an incident what they had observed. See, e.g., United States v. Mejia-Velez, 855 F. Supp. 607, 613-614 (S.D.N.Y. 1994) (admitting several 911 calls made after a shooting, including one call made at least 18 minutes later); Thomas, 453 F.3d at 843-44 (affirming admission of 911 call regarding an assault); United States v. Bradley, 145 F.3d 889, 892 (7th Cir. 1998) (no dispute on appeal that district court properly found 911 call, reporting recent brandishing of gun, qualified as present sense impression); United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995), vacated on other grounds, 516 U.S. 1168 (1996) (affirming admission of 911 call regarding an assault, where call was placed at least seven minutes after the incident); United States v. Johnson, 2006 U.S. Dist. LEXIS 19111, at *9-11 (E.D. La. April 12, 2006) (admitting 911 calls made during and after robbery); United States v. Campbell, 782 F. Supp. 1258, 1260 (N.D. Ill. 1991) (admitting 911 call made shortly after shooting). Here, the Caller indicated that six shots had just been fired near 1160 East 229:

> 911: Police Operator, 1-5-1-7. Where is your
>      emergency?

The Honorable William H. Pauley III
November 29, 2007
Page 8

        UM:   Hello?

        911:  Yes, you've reached 911, do you have an emergency?

        UM:   [U/I]...

        911:  Hello?

        UM:   Hello. 229th on the south side of the Edenwald projects shots fired. Six shots.

He repeats this several times.

      Moreover, in this case, the intrinsic reliability of both the Caller's statements and the Housing Officer's statements are buttressed by other evidence. Cf. Mejia-Velez, 855 F. Supp. at 614 (noting 911 call was consistent "with other testimony" in finding it admissible as a present sense impression). The arresting detectives, through their conversation with a confidential informant, spotted and arrested the defendant, who matched the Officer's description of the shooter and that of the confidential informant. This corroboration further negates the possibility of "deliberate or conscious misrepresentation" that the hearsay rule is meant to avoid. Fed. R. Evid. 803(1) Advisory Committee Note.

      Both the Caller's statements and the Officer's statements thus constitute nontestimonial, admissible present sense impressions, the reliability of which are corroborated by other anticipated testimony.[2]

---

[2] Should the Court determine that the 911 call and the Radio Dispatch are inadmissable as either present sense impressions or excited utterances, the Government would ask to admit these statements for the non-hearsay purpose of explaining to the jury why the detectives responded to the scene; stopped when they saw the defendant; approached him and not those nearby; and paid special attention to the defendant.

The Honorable William H. Pauley III
November 29, 2007
Page 9

## The Defendant's Statements Should Be Admitted

The Government has debriefed the detectives regarding the defendant's statements. First, while being transferred from 1160 East 229 to the precinct, the defendant was told to remain calm and blurted out something along the lines of "You got me with the hammer, it's no big deal." Cf. Tr. at 23:16-20. Second, while providing pedigree information following his arrest, the defendant blurted out something along the lines of "all you got me with is the hammer." Cf. Tr. at 103:6-13.

First, it is well settled that a defendant's spontaneous statements "given freely and voluntarily with any compelling influence" are admissible nothwithstanding the absence of Miranda warnings. United States v. Compton, 428 F. 2d 18, 22 (2d Cir. 1970) (quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Indeed "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478. See also United States v. Vigo, 487 F. 2d 295 (2d Cir. 1973) (voluntary statement before *Miranda* warnings completely read admissible). And a statement given by a defendant that is not in response to questioning can only be suppressed for failure to provide Miranda warnings where the statement was made in response to the "functional equivalent" of interrogation. In Rhode Island v. Innis, 446 U.S. 291 (1980), the Supreme Court affirmed that Miranda was limited to statements in response to interrogation, and held that a defendant is not "interrogated" by law enforcement unless directly questioned by officers or subject to its "functional equivalent," defined as being subject to statements or actions by law enforcement "reasonably likely to evoke an incriminating response." Id. at 301.[3]

Following Innis, the Second Circuit has affirmed that volunteered statements that are not the product of questioning or its "functional equivalent" are admissible regardless of Miranda warnings. See United States v. Gelzer, 50 F.3d 1133, 1138 (2d Cir. 1995) (affirming district court's decision not to suppress volunteered statement). See also United States v. Grayson, 2005 WL 1560478 (S.D.N.Y. 2005) (Patterson, J.) (suppression not

---

[3] As examples of tactics "reasonably likely to evoke an incriminating response," the Supreme Court offered situations in which law enforcement engaged "witnesses" to falsely identify the defendant in a line-up or accuse the defendant of a fictitious crime in the hopes of prompting a confession to the crime under investigation. Id. at 291.

The Honorable William H. Pauley III
November 29, 2007
Page 10

warranted where defendant did not contradict officer's claim that statement was spontaneous); United States v. Medina, 1998 WL 241724, *5 (S.D.N.Y. 1998) (Scheindlin, J.) (officer's comment that seized bag contained "a lot of money" not functional equivalent of interrogation); United States v. Heatley, 994 F. Supp. 475, 477 (S.D.N.Y. 1998) (Sotomayor, J.) (police comment arguably implying case against defendant was strong held not to constitute interrogation). Here, there is no record evidence or suggestion that the defendant was "interrogated" when he gave the above-statements.

Second, by letter dated September 3, 2007, the Government advised the defendant of the substance of his statements; yet, the defendant never moved to suppress them, despite ample notice and lengthy briefing on concomitantly seized physical evidence. See Rule 12(b)(3)(C), Fed. R. Crim. P. (motion to suppress evidence must be made before trial). In addition, the defendant failed to explore, in any way, these statements on cross-examination of the officers at the suppression hearing. The defendant understood the context and substance of his statements prior to the suppression hearing (on September 4, 2007), during the hearing (between September 4 and 10), when he filed his post-hearing brief (on September 19, 2007), when he filed his post-hearing reply brief (on September 25, 2007), and when the Court issued its Order denying his motion to suppress (on November 1, 2007).

Lastly, the defendant's statements are not hearsay, see Rule 801(d)(2), and are plainly relevant, as they constitute an admission that he possessed the firearm at issue.

Accordingly, the defendant's post-arrest statement should be admitted at trial.

### Background Evidence of the Earlier Shooting and the Confidential Informants Descriptions Should be Admitted

Lastly, evidence of the earlier shooting at 1160 East 229, the existence of the confidential informant ("CI"), and the CI's descriptions of the shooter as a black male with braids should be admitted as background evidence. This evidence is needed "to take account of the Government's need for evidentiary richness and narrative integrity in presenting [its] case." Old Chief v. United States, 519 U.S. 172, 183 (1997) (holding that in considering admission of evidence, court must make "these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a

The Honorable William H. Pauley III
November 29, 2007
Page 11

case") (emphasis supplied); United States v. Salameh, 152 F.3d 88, 122 (2d Cir. 1998) (same); United States v. Gilliam, 994 F.2d 97, 101 (2d Cir. 1993) (same).  "[A] piece of evidence may address any number of separate elements, striking hard because it shows so much at once."  Old Chief, 519 U.S. at 186.

      Here, without testimony regarding the earlier shooting, the existence of the CI, and the CI's description of the shooter (a black male with braids) and his location (1160 East 229) the jury will not fully understand -- and will likely be confused and not give due weight to -- why (among other things) the Evidence Collection Unit of the NYPD had just departed; why the officers traveled to 1160 East 229 that evening; why the defendant caught the officer's eye; why the officers approached the defendant; and what the officers were looking for, namely, a firearm.

      Further, a reasonable juror could also infer that the shooter -- a black male with braids with a black gun who had run into 1160 East 229 -- was the defendant; that the defendant had gotten a second gun (namely, the one recovered by the NYPD) and was going to use it later that night.  Absent these facts, the jury might draw the unreasonable and unsubstantiated inference that the officers randomly approached and arrested the defendant that evening.

      Accordingly, evidence of the earlier shooting at 1160 East 229, the existence of the CI, and the CI's descriptions of the shooter as a black male with braids should be admitted as background evidence at trial.

The Honorable William H. Pauley III
November 29, 2007
Page 12

## Conclusion

      For the reasons set forth above, the Government respectfully submits that it should be allowed to introduce at trial: [1] recordings of the 911 call and NYPD Radio Dispatch, for the truth of the matters asserted therein (or, in the alternative, as background evidence); [2] the defendant's statements to the NYPD; and [3] evidence of the earlier shooting, the existence of the confidential informant, and the description of the shooter provided by the confidential informant, all as background evidence that provides needed context for an understanding of the NYPD officers' actions.

                                     Respectfully submitted,

                                     MICHAEL J. GARCIA
                                     United States Attorney
                                     Southern District of New York

                        By: __/s/_____
                           BENJAMIN A. NAFTALIS
                           Assistant United States Attorney
                           Tel.: (212) 637-2456

cc:   David Patton, Esq.