December 4, 2007

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  United States v. Kareem Edwards
     07 Cr. 719 (WHP)

Dear Judge Pauley:

      I write on behalf of my client, Kareem Edwards, in response to the Government's letter of November 29, 2007. In its letter, the Government seeks to introduce at trial: 1) a recording of an anonymous 911 call reporting shots fired three hours before Mr. Edwards' stop; 2) an NYPD Radio Dispatch containing conversations among police officers regarding the same incident; 3) so-called "background evidence" regarding the report of shots fired and a description given by a confidential informant; and 4) two statements allegedly made by Mr. Edwards after his arrest.

      As further discussed below, the 911 and Radio Dispatch recordings and Mr. Edwards' alleged statements should be precluded. The "background evidence" should be carefully circumscribed.

## I. The 911 Call and Radio Dispatch

      The Government argues that a 911 recording of an anonymous caller reporting shots fired three hours before Mr. Edwards was stopped by police should be admitted based on the present sense impression and excited utterance exceptions to the hearsay rule. The 911 call is remarkable, however, not for its excitement or sensory impressions but for its vagueness and its lack of connection to Mr. Edwards. It should be excluded because it is not relevant to this case, it does not meet any exception to the hearsay rule, it would violate Mr. Edwards' Sixth Amendment right of confrontation, and assuming <u>arguendo</u> that the call has any relevance, it is far outweighed by its unfair prejudice.

      The Government also seeks to introduce a recording of conversations between police officers and the police radio dispatcher ("Radio Dispatch") regarding the same incident of shots fired. That recording is inadmissible not just for the reasons stated above but also because it

The Honorable William H. Pauley III                           December 4, 2007
United States District Judge                                  Page 2

Re:   **United States v. Kareem Edwards**
      **07 Cr. 719 (WHP)**

contains layer upon layer of inadmissible hearsay.

  Both recordings are irrelevant, highly prejudicial hearsay, and their introduction would violate both the Federal Rules of Evidence and the Constitution.

  A.   Background

  On July 6, 2007 at approximately 5:00 p.m., an anonymous male caller reported that shots had been fired "on the south side of the Edenwald projects" located "by 1160 or 1154 East 229." (Govt. Ltr. 11/29/07, Ex. A).  The caller gave no indication of how he knew that shots had been fired.  He did not state if he learned of the shots from someone else, or whether he witnessed anything personally either by sight or sound.  He gave no description of a shooter and did not state when the shots had been fired.  He did not state that he was in any danger, did not provide his location, and he does not sound excited on the recording.  See 911 Recording, attached hereto as Exhibit A.  The caller started to identify himself when asked by the dispatcher for his name but hung up when asked for his phone number.  The entirety of the call lasted 52 seconds.

  At approximately the same time, anonymous New York Police Department officers in the Housing Bureau also contacted the radio dispatcher and reported shots fired.  Once again, the call is noteworthy for its lack of information and the uncertainty about how that information was obtained.  None of the officers is ever identified.  At first, one of the officers reports that the location is "1170 E. 229," but later states "1160, it's 1160, inside the building **now they're saying**." (Govt. Ltr. 11/2907, Ex. A) (emphasis added).  The officer goes on to give a description of the shooter as a "black male about 5'10" with a black shirt."  Nowhere in the recording does the officer state who provided that description.  The officer's use of the phrase "now they're saying" strongly suggests, however, that the officer himself did not make any first-hand observations.

  Later in the recording, a different unidentified officer stated that he found "spent shells in front of the building."  (Id. at 3).  Later still in the recording, another officer stated that "there's also a black handgun."  (Id. at 4).  Once again, there is no basis given for the belief that the shots fired involved a black handgun though it appears from the passive language used by the officer and the timing of the statement (at least five minutes after the initial report of shots fired) that it was not based on personal observation.

  Following these reports, an evidence collection team picked up several spent rounds in front of 1160 E. 229th Street.  (9/7/07 Hearing Tr. at 9).  The Government has never disclosed the results of the testing of those rounds or the make or model of those rounds.  Detective Scialabba

The Honorable William H. Pauley III                December 4, 2007
United States District Judge                       Page 3

**Re:**   **United States v. Kareem Edwards**
          **07 Cr. 719 (WHP)**

testified at the suppression hearing, however, that he did not believe those spent rounds matched the gun that Mr. Edwards was later charged with possessing because he had never heard anything about them matching and typically he would be informed if there was a match. (Tr. at 30, 50). In addition, the gun that Detective Scialabba claims Mr. Edwards' possessed was not missing any rounds.

Approximately three and a half hours after the reports of the shots fired, Kareem Edwards was stopped and arrested by members of the New York Police Department shortly after he got into a car parked in front of 1154 E. 229th Street. At the suppression hearing held previously in this case, Detective Scialabba claimed that he initiated the stop because Mr. Edwards generally matched a description he had received from a confidential informant ("CI"), and he was carrying a towel and walking quickly. (Tr. 17). The description he claims to have received from the CI was of a black male with braids. (Tr. at 6, 12). Alternately, he claims the descriptions was of a tall, black male with braids. (Tr. 17).

Detective Scialabba never claimed to have heard the 911 call or the Radio Dispatch recordings. The only other officers present for Mr. Edwards' arrest, Detectives Abdur-Rahim and Estwick, claim to have received all of their information from Detective Scialabba. (Tr. 79, 96). Thus, none of the officers involved in this case heard the 911 and Radio Dispatch recordings. Nor are the varying descriptions those officers claim to have had (ranging from no description -- Detective Abdur-Rahim -- to a tall, black male -- Detective Estwick -- to a tall, black male with braids -- Detective Scialabba) consistent with the recordings. Conversely, the description given in the Radio Dispatch -- but not from the 911 call which was silent as to a description -- contains information not possessed by the officers, such as the description of a black shirt and a black handgun.

      B. <u>The 911 Call and the Radio Dispatch Are Not Relevant</u>

While the Government spends a great deal of time explaining why the 911 and Radio Dispatch recordings are not precluded from admission by the hearsay rule, it spends scant time explaining the relevance of those calls. In conclusory fashion, the Government seems to offer two reasons: 1) that Mr. Edwards was in fact the shooter referred to by the 911 caller and the Radio Dispatch and that it should be allowed to advance that argument; and 2) that regardless of Mr. Edwards' connection to the activity described in the calls, the recordings explain the behavior of the police officers who arrested him. Both assertions are wholly without merit.

The first basis offered by the Government is truly astonishing: "a reasonable juror could also infer that the shooter -- a black male with braids with a black gun who had run into 1160

The Honorable William H. Pauley III                                                              December 4, 2007
United States District Judge                                                                            Page 4

**Re:**    <u>United States v. Kareem Edwards</u>
            07 Cr. 719 (WHP)

East 229 -- was the defendant; that the defendant had gotten a second gun (namely, the one recovered by the NYPD) and was going to use it later that night." The Government's assertion is nothing more than fantasy, created in an effort to explain away why the objective facts *belie* the notion that Mr. Edwards was the earlier shooter. The gun at issue in this case did not match the spent shell casings, and it was not missing any ammunition. The Government's story is a remarkable piece of fiction that seems to have been made up out of whole cloth in an effort to devise a theory for the relevance of the recordings. Mr. Edwards is charged with possessing the gun that Detective Scialabba claims to have found at the time of Mr. Edwards' arrest. Nothing about the reports of shots fired from a different gun three hours earlier makes that possession more or less likely as required for admission by Rule 401.

       The second basis is equally unavailing. The recordings do not explain the officers' conduct for the simple reason that the officers were not reacting to the calls and claim no knowledge of their contents. Instead, Detective Sciallaba claims to have received his information regarding the shooting from a CI, and Detectives Abdur-Rahim and Estwick claim to have received their information from Detective Scialabba. None of the detectives claimed any knowledge of the descriptions from the 911 calls (which contained no description) or the Radio Dispatch (which contained a different description than the one Detective Scialabba claims to have had).

       The recordings should be excluded under Rule 401 because they do not tend to show anything at all about whether it is more or less likely that Mr. Edwards possessed the gun at issue here. Moreover, whatever probative value the Government can conjure is far outweighed by the unfair prejudice and confusion of the issues proscribed by Rule 403. Having jurors listen to recordings of descriptions of shots fired, in the vicinity of children, creates a significant risk that the jurors will be guided by inflamed passions rather than rational reasoning.

            C.      <u>The 911 Call and Radio Dispatch Are "Testimonial," and, Therefore, Inadmissible Absent An Opportunity For Cross-Examination Of The Declarant.</u>

       Two years ago, the Supreme Court fundamentally altered the analysis of when hearsay is admissible. In <u>Crawford v. United States</u>, the Court articulated two categories of hearsay, "testimonial" and "nontestimonial," and explained that "testimonial" hearsay, because it is the subject of the Confrontation Clause, is admissible in a criminal case against a defendant only when the declarant is unavailable and the defendant has previously had an opportunity to cross-examine the declarant regarding the hearsay. 541 U.S. 36, 53-54 (2004). By contrast, "nontestimonial" hearsay, because it is not the subject of the Confrontation Clause, is admissible if it falls within a firmly rooted exception to the hearsay rule or otherwise bears strong

The Honorable William H. Pauley III                           December 4, 2007
United States District Judge                                              Page 5

Re:     **United States v. Kareem Edwards**
        **07 Cr. 719 (WHP)**

particularized guarantees of trustworthiness deriving from the particular circumstances in which the statement was made.  Id.  Thus, following Crawford, every hearsay statement must first be categorized as "testimonial" or "nontestimonial" based on the nature and context of the statement, and then a determination must be made whether the applicable standard for admissibility is met.

A 911 call is not inherently either testimonial or nontestimonial, unlike, for example, grand jury testimony, on the one hand, or a casual conversation with a friend, on the other hand.  Some 911 calls may produce "testimony," others may not.  Such calls have the potential to produce testimonial statements because they involve questioning by law enforcement, are always recorded, and are frequently used in court proceedings. Indeed, as the Court of Appeals for the First Circuit recently noted in analyzing a 911 call for admissibility, "the police record and preserve incoming 911 calls for, among other things, potential prosecutorial use.  Most people not only understand this fact but also understand that because 911 is a pathway to contacting the police in emergency situations, such communications are to be taken seriously. . . . Emphasizing these facts, many courts have classified 911 calls of this nature as functionally equivalent to formal statements to the police."  United States v. Brito, 427 F.3d 53, 60 (2005) (citing United States v. Arnold, 410 F.3d 895, 903 (6th Cir. 2005); People v. Cortes, 4 Misc.3d 575, 781 N.Y.S.2d 401, 405-06 (N.Y.Sup.Ct. 2004))**.**

In Davis v. Washington, a follow-up case to Crawford, the Supreme Court analyzed the admissibility of a 911 call and emphasized that the determination of whether a 911 call is testimonial, or not, will turn on what the primary purpose of the call is from the caller's point of view – to obtain "police assistance to meet an ongoing emergency" or "to provide a narrative report of a crime absent any imminent danger."  126 S.Ct. 2266, 2273-74, 2276 (2006) (also finding the acts of 911 operators to be acts of the police).

In Davis, the 911 caller was an identified woman, who spoke frantically, and reported an unfolding domestic violence incident of which she was the victim.   The Court concluded that this particular 911 call was nontestimonial and thus not subject to the Confrontation Clause.  In so concluding, the court stressed the following factors: first, the caller was speaking about events as they were actually happening; second, the caller was injured and personally facing a serious physical threat as she spoke; and, third, the caller's responses to the questions were frantic and made in an unsafe environment.  126 S.Ct. at 2276-77.  The Supreme Court specifically contrasted this nontestimonial situation with a situation when "one might call 911 to provide a narrative report of a crime absent any imminent danger."  Id.

The 911 call at issue here, when analyzed under the rubric of Davis, is testimonial.  There

The Honorable William H. Pauley III                                    December 4, 2007
United States District Judge                                                          Page 6

Re:    **United States v. Kareem Edwards**
       **07 Cr. 719 (WHP)**

is no indication whatsoever that the anonymous caller was ever in imminent danger much less in danger at the time of the call. Indeed, the caller gives no basis for his knowledge of the shots fired or his own location in reference to the shots fired. Unlike the caller in <u>Davis</u>, the caller here was not a victim of the incident describing events as they were happening, was not facing a serious physical threat as he spoke, and was not responding in a frantic manner.

The Radio Dispatch recording falls even farther of the mark. It contains nothing but conversations among police officers who do not appear to have any personal knowledge of the incident. The officers are extremely calm on the recording, and as confirmed at the end of the portion of the recording offered by the Government, none of the officers were in actual pursuit of the suspect. Their descriptions of the suspect and the activity surrounding the shots fired came from third parties who themselves are unknown and unavailable to testify. Thus, not only is Mr. Edwards deprived of the opportunity to question the police officers heard on the recording, but he is prevented from questioning the original declarants who are responsible for the statements.

D. <u>The 911 Call and the Radio Dispatch Are Inadmissible Hearsay</u>

The recordings should also be precluded because contrary to the Government's assertions, they do not qualify for either the present sense impression or excited utterance exception to the bar against the admission of hearsay.

A recent Second Circuit case is directly on point. In <u>Brown v. Keane</u>, 355 F.3d 82 (2d Cir. 2004), the Court granted a defendant's habeas corpus petition on the ground that a 911 call, reporting an ongoing shooting, was improperly admitted under the excited utterance and present sense impression exceptions to the hearsay rule. The transcript of the 911 call was as follows:

> Operator ("O"): Police Operator 1077, where is your emergency?
> Anonymous Male Caller ("A"): Yeah, 1411 Bronx River Avenue. Guy's got a gun. Two guys in green coats.
> O: Okay, one moment.
> A: It's an emergency, 'cause they shooting.
> O: Are they in front of the building?
> A: Yeah, right in front.
> O: But they shooting at each other?
> A: Yeah, 1411 Bronx River Avenue. They're trying to get in the bar.
> O: Between 173rd and 174th. Are they Black, White or Hispanics?
> A: Both light-skinned blacks. Both have green coats on.
> O: Wearing green coats. And they're shooting? -

The Honorable William H. Pauley III         December 4, 2007
United States District Judge            Page 7

Re: **United States v. Kareem Edwards**
   **07 Cr. 719 (WHP)**


   A: Right at the bar, at the Phoenix.
   O: At the Phoenix Bar?
   A: Yeah, you got to get someone over here quick now.
   O: I've already put this call in, sir. Are they shooting at each other?
   A: No, they're trying to shoot at the door of the bar, trying to get in the bar.
   O: To the Phoenix Bar, right?
   A: Right.
   O: Trying to get in.
   A: Can you hurry, please.
   O: Sir, I've already put the call in, I'm not...
   A: Alright.
   O: Okay, you want to leave your name and number?
   A: No, that's alright.
   O: Police'll be there.
   A: Thanks.

Id. at 86, n. 1. The Court found that the 911 call satisfied neither the present sense impression nor the excited utterance exception. As for the present sense impression, the Court noted that from all the surrounding evidence it seemed unlikely that the caller had visually observed the shooting "but rather heard the shots and, having recently seen the armed men leave the bar, assumed they were the ones doing the shooting." Id. at 88. The Court rejected the prosecution's argument for admissibility stating, "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." Id. at 89.

  Here, the anonymous 911 caller did not ever indicate what his "sense impression" was. He is not sure of the precise location of the shots fired, and he did not give any description of a shooter, indicating that he likely did not visually observe anything. In Brown, the caller was far more specific about details, including the precise address of the incident and the description of the perpetrators, indicating that, at least at some point, he had observed the people he believed to be shooting. Here, the caller's basis of knowledge is entirely unknown.

  he Radio Dispatch recording falls even farther afield from admissibility. The officers did not observe anything first hand. The present sense impression exception is not applicable for statements regarding *someone else's* impression.

  The Brown Court also rejected the prosecution's argument that the 911 call be admitted as an excited utterance, finding that the "exception does not obviate the requirement that the

The Honorable William H. Pauley III                                  December 4, 2007
United States District Judge                                         Page 8

Re:     **United States v. Kareem Edwards**
        **07 Cr. 719 (WHP)**

declarant have personal knowledge of the subject of his report." Id. at 90.

Here, in addition to a lack of information about the 911 caller's basis for the knowledge of his report, the caller simply does not seem terribly excited. He did not indicate whether he saw anything startling himself, he was not in any sort of danger, and the tone of his voice is not panicked or frantic. The same, and more, holds true for the Radio Dispatch. The officers do not indicate the basis for their knowledge of either the shooting or the description of the alleged shooter, and they do not sound the least bit excited on the recordings.

E.  The Recordings Should Not Be Admitted

Regardless of whether the recordings could meet some exception to the hearsay rule and whether their introduction would violate Mr. Edwards confrontation rights, they should not be admitted because they are irrelevant to the charge against him. Every case cited by the Government in support of admitting 911 recordings, all involve 911 calls reporting crimes *for which the defendant was charged*. That is not the case here, and whatever scant relevance the recordings might have based on the Government's truly staggering leaps of logic, is far outweighed by its unfair prejudice.

**II.  Background Story**

The Government also moves for the introduction of "evidence of the earlier shooting at 1160 East 229, the existence of the confidential informant ("CI"), and the CI's descriptions of the shooter as a black male with braids" as background evidence. Presumably, the evidence the Government is referring to is the testimony of the NYPD detectives.

The practice of eliciting police "background" testimony that thwarts a defendant's right to confront and cross-examine his accusers has been strongly disapproved of following the Supreme Court's decision in Crawford. See, e.g., United States v. Maher, 454 F.3d 13, 22-23 (1st Cir. 2006); United States v. Cromer, 389 F.3d 662, 674 (6th Cir. 2004); United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004); see also 2 Broun, et al., *McCormick on Evidence* § 249, at 103 (5th ed. 1999) (need for police testimony giving substance of statements regarding the reason for their presence is slight and the likelihood of misuse is great).

To the extent that some background information is necessary for the detectives to explain their conduct, the defense does not object. That background information, however, should be tightly circumscribed and should certainly not include any of the details of the 911 call or Radio Dispatch recordings. Such evidence is not necessary for the Government to tell its story.

The Honorable William H. Pauley III December 4, 2007
United States District Judge Page 9

Re:   **United States v. Kareem Edwards**
      **07 Cr. 719 (WHP)**

### III.  The Defendant's Alleged Admissions

The Government seeks to admit two, post-arrest, custodial statements that Mr. Edwards allegedly "blurted out." (Govt. Ltr. 11/29/07, p. 9). The first is the alleged statement to Detective Scialabba which was "something along the lines of, 'You got me with the hammer, it's no big deal.'" (Id.). The second was allegedly made to Detective Estwick and was "something along the lines of 'all you got me with is the hammer.'" (Id.). The Government seeks to introduce the statements as admissions by a party-opponent under Rule 801(d)(2).

The statements should be precluded on two grounds. First, they were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Second, they are not reliable or relevant and would be highly prejudicial.

   A.  The Violation of Miranda

      1.  *Procedural Background*

Before addressing the substance of the Miranda claim, a brief history of the procedure of the case is necessary to explain the timing of the claim. When the Government made its Rule 16 discovery disclosure on August 3, 2007, it did not inform the defense of any statements made by Mr. Edwards. At Mr. Edwards' first appearance, the Court set a motions deadline of August 21, 2007. On that date, Mr. Edwards filed a motion to suppress based on an illegal search and seizure. A hearing was then set for September 4, 2007.

The day before the hearing, on September 3, 2007, the Government first notified the defense that Mr. Edwards had allegedly made a statement. By letter, the Government stated, "According to Detective Dennis Estwick, after the defendant had been advised of his Miranda rights, he stated, in sum and substance, "Oh, you got me." See Govt. Ltr. 9/3/07, attached hereto as Exhibit B). The Government made no disclosure regarding any statement made to Detective Scialabba. At the hearing, for the first time, the defense learned during Detective Scialabba's testimony that he claimed that Mr. Edwards "made a comment about how -- I think he said, 'You got me with the hammer, it's no big deal,' something to that effect." (Tr., 23). On cross-examination, Detective Scialabba stated that he did not remember exactly what Mr. Edwards had said and that the statement about the gun may have been made in response to questioning:

   Q: You don't remember the exact words?
   A: I remember it was a discussion about the scuffle and, and he had mentioned something

The Honorable William H. Pauley III            December 4, 2007
United States District Judge                   Page 10

**Re:    United States v. Kareem Edwards**
       **07 Cr. 719 (WHP)**

> about the gun, like it's not that serious, you got me with the hammer, something to that effect. I don't remember the exact sentence that he said.
> Q: And was this in response to your asking him about the gun?
> A: I don't, I don't remember that either. I may have asked. I don't remember.

(Tr. 53).

Detective Estwick, in his testimony, stated that at the precinct station while Mr. Edwards' pedigree information was being taken, he asked Mr. Edwards, "do you want to talk about anything. He refused or whatever the case may be. He made a little brief statement about, all you got me with is the hammer." (Tr., 103).

Following the hearing, the parties briefed the issues raised by Mr. Edwards motion seeking to suppress the gun as evidence obtained in violation of the Fourth Amendment. The Government is correct that Mr. Edwards did not raise the Miranda issue in that post-hearing briefing. He did not do so 1) because that was not the subject of the motion and 2) because if the Court had granted the motion, the statements would have also been suppressed as fruit of the illegal search and seizure, and the additional Miranda motion would have been unnecessary.

Shortly after denying Mr. Edwards' motion, the Court convened a conference on November 13, 2007 and set a trial date for December 10, 2007. It would undoubtedly have been the better course for defense counsel to have filed a motion to suppress for the Miranda violation immediately upon the denial of the search and seizure motion, or in the exercise of caution, sometime prior to the Court's ruling. For not having done so, I apologize.

Rule 12(b)(3), however, only requires that motions to suppress be raised "before trial." Given the slightly unorthodox timing of the Government's disclosures regarding the alleged statements, the discrete nature of the inquiry and the importance of the issue, I respectfully request that the court entertain the motion. The issue can be decided based on the record as it stands, or if the Court feels any further factual inquiry is necessary, it can be done quickly before the trial begins on December 10, 2007.

    2. Miranda Discussion

When an individual is in custody and makes statements in response to questions by the police, the responses may not be admitted at trial unless the Government can prove by a preponderance of the evidence that the defendant voluntarily and knowingly waived his Miranda rights. See Missouri v. Seibert, 542 U.S. 600, 608 (2004) (holding that "failure to give the

The Honorable William H. Pauley III                                                  December 4, 2007
United States District Judge                                                            Page 11

Re:    **United States v. Kareem Edwards**
         **07 Cr. 719 (WHP)**

prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained" and that "the burden of showing admissibility rests, of course, on the prosecution.") quoting Brown v. Illinois, 422 U.S. 590, 604 (1975).

      Here, there is no dispute that the alleged statements were made while Mr. Edwards was in custody. Both Detectives Scialabba and Estwick claim that the statements were made after Mr. Edwards' arrest.

      The Government argues that while Mr. Edwards' was in custody when he made the statements, they were not made in response to questioning but instead were spontaneous. The testimony of Detectives Scialabba and Estwick, however, contradict that assertion, and the Government cannot meet its burden of showing that Mr. Edwards' statements were made spontaneously rather than in response to questioning. Detective Scialabba stated, "I might have asked [about the gun]. I don't remember" in response to what prompted Mr. Edwards to make the statement. Detective Estwick stated that believed he asked Mr. Edwards if he wanted "to talk about anything." Neither detective, however, had a specific recollection of the conversation.

      In addition, no valid Miranda waiver was ever given by Mr. Edwards. The record is not clear when or if he was ever read his Miranda warnings prior to being taken to the precinct, but at the precinct, he completed a Miranda form in which he refused to waive his rights. See Miranda Form, attached hereto as Exhibit C.

      To the extent that the Court feels that further inquiry into the Miranda issue is necessary, the defense requests that Detectives Scialabba and Estwick be questioned briefly about the topic prior to the start of trial on December 10, 2007.

      B.  The Statements Are Not Reliable and Are Highly Prejudicial

      Even if not violative of Miranda, the statements should be excluded as unreliable, unprobative, and highly prejudicial.

      The detectives themselves cannot recall the wording of Mr. Edwards' alleged statements, and there is no written record to substantiate them. Detective Estwick apparently first told the Government of the statement approximately two months after Mr. Edwards' arrest. And when he told the Government of the statement, he described it as having been, "Oh, you got me" not "all you got me with is the hammer" as he later described at the hearing. Detective Scialabba, on the other hand, never told the Government of a statement by Mr. Edwards prior to the hearing (at least, none was disclosed to the defendant prior to the hearing). And when questioned about

The Honorable William H. Pauley III                    December 4, 2007
United States District Judge                           Page 12

**Re:**  **United States v. Kareem Edwards**
       **07 Cr. 719 (WHP)**

what Mr. Edwards had said, Detective Scialabba was extremely unsure of himself, stating "I don't remember exactly what was said because I'm not really positive. I know I remember him referring to the gun as a hammer. That's what I remember." (Tr. at 53).

Given the uncertainty surrounding the substance of the statements, the context in which they were made and the heavy possible prejudice to Mr. Edwards if admitted, the Court should preclude them.

## Conclusion

For all of the above stated reasons, the Court should preclude the introduction of the 911 and Radio Dispatch recordings, limit the police testimony regarding the details of the earlier reports of shots fired, and preclude the introduction of Mr. Edwards' alleged statements.

Respectfully submitted,

David Patton
Attorney for Mr. Edwards
(212) 417-8762

cc:    Benjamin A. Naftalis
       Assistant U.S. Attorney